UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

* * * * * * * * * * * * * * * * * *

Hollis J. Larson,

                Plaintiff,        **REPORT AND**
                                          **RECOMMENDATION**
vs.

David Crist et al,

                Defendants.      Civ. No. 05-2720 (PAM/AJB)

* * * * * * * * * * * * * * * * * *

## I. Introduction

This matter is before the Court on Defendants' Motion for Dismissal or for Summary Judgment [Doc. No. 117] and has been referred to the undersigned United States Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1. The Plaintiff appears pro se, and the Defendants appear by Mark B. Levinger, Assistant Minnesota Attorney General.

## II.   Background

At the time of the events at issue, Plaintiff was an inmate housed at the Minnesota Correctional Facility-Stillwater. Plaintiff alleges Defendants violated his civil rights on the eve of his expected release from prison. As a result of the events on February 2, 2003, Plaintiff was not released the next day but instead served a segregation sentence for one hundred and five days. Plaintiff filed the present action on November 18, 2005. Plaintiff filed an Amended Complaint on

February 22, 2006.  On November 30, 2006, Defendants filed a Motion for Dismissal or for Summary Judgment of the Amended Complaint.

In the Amended Complaint, Plaintiff names the following employees of the Minnesota Correctional Facility-Stillwater, in their individual capacities, as defendants:  David Crist, Warden; David Corbo, Assistant Warden; Harley Nelson, Deputy Commissioner of Community and Support Services; Cari Gerlicher, Office of Special Investigations Director; Pat Lais, Central Transportation Director; Monica Lais, Captain; Michael Seath, Lieutenant and Discipline Officer; T. Boone; Ronald Schwindel, Sergeant; John Doe, Sergeant; and Correctional Officers Jeffrey White, Eric Hennen, John Sofie, Christopher Chute, Athanasios Chronakos, Jessica Serowiecki, Michael Spah, and Suzette Borst.  (Amended Complaint III.B. ¶¶ 1-18.)

Plaintiff alleges during the evening of February 2, 2003, he was escorted to the prison Security Center on Defendant Schwindel's orders as a result of a conspiracy between Schwindel and Defendant Monica Lais.  (Amended Complaint IV ¶¶ 1 and 22.)  Plaintiff was escorted to the Security Center by Defendants White, Hennen, Sofie, Chute, Chronakos, Serowiecki, Spah and Borst, whom he alleges stopped walking for no reason during the escort and then chastised him for not cooperating. (Id. at ¶ 2.)  Plaintiff, who was diagnosed with Generalized Anxiety Disorder, was having a panic attack and responded to Defendant Monica Lais' questions with expletives.  (Id. at ¶ 3.)  Plaintiff alleges one or more of the

2

correctional officers shouted at him and manhandled him when he did not agree to comply with a strip search. (Amended Complaint at ¶¶ 4-5.)

When the same officers escorted him to segregation they abruptly stopped and started walking and berated Plaintiff for not cooperating. (Id. at ¶ 6.) Plaintiff alleges he then laid down in surrender and Defendant White knocked off Plaintiff's eyeglasses and sprayed mace directly into his eyes. (Id. at ¶¶ 7-8.) Anxious to get to the shower to wash his eyes, Plaintiff stood up but was slammed face first into the floor, with his hands cuffed behind his back, after the officers falsely accused him of kicking. (Id. at ¶¶ 10-11.) This incident blackened both of his eyes and caused contusions to his wrists and an abrasion on his leg. (Id.) Defendant Monica Lais observed these events but did nothing to intervene. (Id. at ¶ 12.) Defendants White, Hennen, Sofie, Chute, Chronakos, Serowiecki, Spah and Borst did not directly abuse Plaintiff but stood by and watched while other correctional officers abused him. (Id. at ¶ 13.) Plaintiff alleges he never resisted or threatened the defendant correctional officers and did not violate any institutional rules. (Id. at ¶ 14.) Defendants failed to photograph Plaintiff's injuries. (Id. at ¶ 18.)

Plaintiff alleges Defendants Crist and Corbo were aware that some of the defendant correctional officers have previously used excessive force against inmates but failed to take any action to curb such abuse. (Id. at ¶¶ 16-17.) Plaintiff further alleges that he repeatedly asked Defendant John Doe for medical attention but the request was ignored or denied for one week. (Amended

3

Complaint ¶ 19.) When the nurse saw him, she refused to take pictures of his injuries. (Id. at ¶ 20.)

Plaintiff alleges Defendant Schwindel falsely accused him of being intoxicated and of kicking and assaulting staff. (Id. at ¶ 23.) On February 18, 2003, Defendant Seath presented Plaintiff with a plea agreement in connection with the alleged prison rule violations. Plaintiff signed the plea agreement for concurrent punitive solitary confinement sentences. (Id. at ¶ 24.) Plaintiff alleges that some time later, Defendants Corbo, Seath and Boone changed the plea agreement to consecutive sentences and that Plaintiff was not given notice or a hearing regarding the changes. (Id. at ¶ 25.) Plaintiff wrote kites and grieved these events but Defendants did nothing. (Amended Complaint at ¶¶ II.B and 26.)

Plaintiff alleges the various Defendants violated his right to due process under the Fifth and Fourteenth Amendments to the Constitution; subjected to him to cruel and unusual punishment in violation of the Eighth Amendment to the Constitution and committed false imprisonment, assault and battery, negligence, and intentional infliction of emotional distress in violation of Minnesota state law.

Defendants deny Plaintiff's allegations in the Amended Complaint. Defendant Schwindel avers that on February 2, 2003, he informed Defendant Monica Lais that Plaintiff's behavior was odd because he insisted he was being released that night and that he refused to take a urinalysis test. (Schwindel Aff., ¶ 3.) When Plaintiff disobeyed an order and used profanity, Schwindel called for a security team. (Schwindel Aff., ¶ 4.) The security team escorted Plaintiff to the

4

security center where he refused to cooperate with a strip search and consequently was taken to segregation. (White Aff., Ex. 1.) Defendant Seath avers that Plaintiff was kicking and struggling during the transfer to segregation. (Seath Aff., Ex.3.) Defendant Monica Lais authorized use of a chemical irritant to Plaintiff's face, after which he became cooperative. (Lais Aff., Ex. 3.)

Plaintiff was placed in a shower to wash his face before being placed in a cell in segregation. (Lais Aff., Ex. 3.) Nurse Cheryl Cole accompanied Plaintiff to segregation and noted that he was breathing without difficulty. (Munson Aff., Ex. 4.) Dr. Dayton Burkholder examined Plaintiff on February 5, 2003. (Id.) Dr. Burkholder noted a contusion without ocular injury and that the injuries would heal satisfactorily. (Munson Aff., Ex. 4.)

Defendant Seath charged Plaintiff with six different disciplinary violations as a result of these events. (Seath Aff., ¶ 3.) On February 18, 2003, Seath and Plaintiff reached a plea agreement for a sentence of 120 days of segregation time with Plaintiff actually serving 105 days. (Id. at ¶¶ 7-8.) Plaintiff signed the plea agreement, waiving a hearing on the charges. (Id. at ¶ 7, Ex. 6.)

The plea agreement form was filled out in error in that it noted concurrent "CC" 90 days sentences for disorderly conduct and abuse/harassment and 30 days for interference with security procedures. (Seath Aff., ¶ 9.) The intent of the parties was that the two ninety day sentences would be concurrent with the thirty day sentence being consecutive to those sentences. (Id.) Clerical staff, Tamara Boone, attempted to correct the document by changing concurrent "CC" to

5

consecutive "CS." (Seath Aff., ¶ 10.) This change was not correct because it would have resulted in the two ninety day sentences being served consecutively, calling for longer than 105 days being served. Id. Ms. Boone tried to correct the error by indicating that 105 days would be served. (Seath Aff., ¶ 11.) Plaintiff actually served 105 days in segregation. (Id.)

### III.  Discussion

   A.   Standard of Review.

Under Federal Rule of Civil Procedure 12(b)(6) and (c) a party may move to dismiss a claim for failure to state a claim upon which relief may be granted.[1] If matters outside the pleadings are presented to and not excluded by the court, "the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56." Fed. R. Civ. P. 12(b). Plaintiff and Defendants have submitted affidavits and exhibits in support of their arguments. Thus, the Court will treat the present motion as a motion for summary judgment.

Summary Judgment is proper if there is no genuine issue as to any material fact. Fed. R. Civ. P. 56; Celotex v. Catrett, 477 U.S. 317, 323 (1986). No genuine issue as to any material fact exists where a party fails to make a showing sufficient to establish an element essential to that party's case. Id. In considering a motion for summary judgment, the court must not weigh the evidence. Anderson v.

---

[1] Plaintiff asserts Defendants cannot bring a motion to dismiss under Federal Rule of Civil Procedure 12 after they have filed a Joint Answer to the Amended Complaint. Defendants reply they have preserved their defenses by raising the defenses in their Answer. The issue, however, is not relevant because Defendants' motion is for dismissal under Federal Rule of Civil Procedure 12(b) or for summary judgment under Federal Rule of Civil Procedure 56. This Court will treat the motion as one for summary judgment because the parties have presented matters outside the pleadings for consideration. A defending party can make a motion for summary judgment at any time. Fed. R. Civ. P. 56(b).

6

Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  The court must accept the nonmoving parties allegations as true and must draw all justifiable inferences in favor of the nonmoving party.  Id.

    B.    Legal Analysis.

        1.    Insufficiency of process.

Defendants argue the Amended Complaint should be dismissed against Defendants Sofie, Spah, and John Doe for insufficiency of service of process.  Plaintiff asserts he is entitled to have the U.S. Marshals Service serve process on Defendants Sofie and Spah and that he has made a good faith effort to do so.  However, Plaintiff states Defendants' counsel indicated Sofie and Spah are serving in the military in Iraq, which is why they have not been served.

Under the circumstances, Plaintiff has shown good cause for not timely serving Defendants Sofie and Spah.  See Moore v. Jackson, 123 F.3d 1082, 1085 (8th Cir. 1997)(finding good cause where prisoner furnished information necessary to identify defendant and Marshals Service failed to effect service).  However, a district court does not have to order defendants served if the plaintiff cannot make any rational argument in law or fact entitling him to relief.  Id. at 1086, n.2 quoting Williams v. White, 897 F.2d 942, 944 (8th Cir. 1990).  In this case, Plaintiff cannot make a rational argument entitling him to relief against any Defendants on his federal court claims because, as described below, he has failed to exhaust administrative remedies as to all but one federal claim and failed to obtain habeas

7

relief on the exhausted federal claim. Service on Sofie and Spah would serve no purpose where they would be entitled to dismissal as are the defendants who have been served in this action.

Plaintiff further argues he should be excused from amending his complaint to identify the John Doe because Defendants, in their Joint Answer, have identified John Doe as Loretta Ryks. Plaintiff urges the Court to join Loretta Ryks as a necessary party under Federal Rule of Civil Procedure 19.

Joining Loretta Ryks under Federal Rule of Civil Procedure 19 would not exempt Plaintiff from serving a summons and amended complaint upon her. A person must be subject to service of process to be joined as a party. Fed. R. Civ. P. 19(a). To name Loretta Ryks as a defendant, Plaintiff must amend the complaint pursuant to Federal Rule of Civil Procedure 15 and meet the requirements concerning amendments to change the name of a party against whom a claim is asserted under Federal Rule of Civil Procedure 15(c)(3).

2.  Exhaustion of administrative remedies.

Defendants argue Plaintiff failed to exhaust administrative remedies for all claims, except the issue of the length of the segregation sentence, and the unexhausted claims must be dismissed. Plaintiff responds that Minnesota Department of Correction's ["MN DOC"] grievance procedure is not certified by the U.S. Attorney General and is not fair and effective. Defendants are correct in their assertion that such response is not relevant under the current state of the law.

8

Under the Prisoner Litigation Reform Act "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U. S. C. §1997e(a) (1994)(amended 1996). Exhaustion is a mandatory prerequisite. Porter v. Nussle, 534 U.S. 516, 520 (2002). The administrative remedies that must be exhausted need not meet federal standards, nor must they be "plain, speedy, and effective. 534 U.S. at 524.

The U.S. Supreme Court has held *proper* exhaustion is required. Woodford v. Ngo, 126 S.Ct. 2378, 2382 (2006)(emphasis added). Procedurally defective administrative grievances or appeals do not constitute proper exhaustion. Id. at 2386. Therefore, this Court must look to whether Plaintiff properly exhausted his administrative remedies.

The parties do not dispute that MN DOC grievance procedure provides an administrative remedy for Plaintiff's claims regarding excessive force and denial of medical care. The grievance process is set out in MN DOC Policy 303.100 "Offender/Staff Communication and Grievance Procedure." (Mem. of Law in Support of Motion for Dismissal or for Summary Judgment, Thron Aff., ¶ 2, Ex. 1.) The procedure first requires an inmate to use a kite to communicate with staff to informally resolve the issues. (Id.) If the issue is not resolved, the inmate may submit a formal grievance identifying a single complaint and attaching a kite to indicate an attempt at informal resolution. (Id.) The facility grievance coordinator

9

logs the formal grievance into the database system unless the grievance was returned to the inmate because it contained multiple issues or did not indicate the inmate attempted to informally resolve the issues. (Id.)

The grievance coordinator sends the inmate written notice of the date the grievance was logged into the database. (Thron Aff., Ex. 1.) The grievance coordinator provides written notice of the warden or designee's decision on the grievance within twenty working days. (Id.) If the inmate does not receive written notice within such time, he or she may consider the grievance dismissed and appeal the grievance immediately. (Id.) The appeal is sent to the central office grievance appeal coordinator and is logged into the grievance appeal database. (Id.)

Plaintiff asserts he exhausted, or was prevented from exhausting, his excessive force claim. Plaintiff informed Defendant Crist of excessive force in an informal grievance. (Mem. of Law in Opposition to Motion for Dismissal or for Summary Judgment, Larson Aff., Ex. 1.) He then filed a formal grievance. (Id. at Ex. 2.) Plaintiff asserts the return of the formal grievance to him proves he was prevented from exhausting administrative remedies. (Id. at Ex. 3.) Defendants respond that even if this grievance is considered to raise the issue of excessive force, Plaintiff failed to raise the issue at a Disciplinary Hearing.

In the Offender Kite form of February 5, 2003, Plaintiff indicates he is attempting to resolve an informal grievance. (Larson Aff., Ex. 1.) He describes being assaulted, maced and wrongly charged for assaulting staff. (Id.) The

10

Warden's response to the kite appears only to address the issue of whether the charges against Plaintiff for assault on staff are false. The Warden responded that the appropriate place to raise this issue is in his defense at the Disciplinary Hearing. (Larson Aff., Ex. 1.)

Plaintiff filed a formal grievance on February 10, 2003. Although the overriding grievance appears to be that staff filed a false Discipline Report, it states: "All these staff have grievously assaulted me and lied about it." Plaintiff's formal grievance was returned on February 10, 2003 on the basis that he failed to attach copies of the kite showing he attempted to resolve the issue informally and that there is another appeal process for the issue [the Disciplinary Hearing]. (Id.)

There is no evidence in the record that Plaintiff was prevented from refiling his formal grievance with the appropriate attachment. Likewise, Plaintiff has not presented evidence that anyone prevented him from writing an informal grievance to make clear to the Warden that he was attempting to raise two issues, false charges and excessive force. Plaintiff did not properly exhaust nor was he prevented from properly exhausting his administrative remedies as set forth in MN DOC Policy 303.100.

Plaintiff asserts he did not fail to exhaust administrative remedies concerning denial of medical care but that defendants did not provide him with copies of his informal kites and formal grievance on this issue in discovery. Defendants reply that they provided the Court with a grievance listing log that

indicates Plaintiff did not file a formal grievance on the issue of denial of medical care. (Mem. of Law in Support of Defendants' Motion for Dismissal or for Summary Judgment, Thron Aff., Ex. 2.)

Plaintiff describes writing kites to informally resolve the issues in his complaint and filing a formal grievance. (Amended Complaint II.C. ¶ 1.)[2] Defendants produced the single formal grievance Plaintiff filed. (Thron Aff., ¶ 7, Ex. 3.) Upon review of the grievance, the Court finds Plaintiff did not raise the issue of denial of medical care. Plaintiff did not exhaust his claim for denial of medical care.

> 3. <u>Conviction not overturned in habeas corpus proceeding</u>.

The parties do not dispute that Plaintiff exhausted his administrative remedies with respect to the issue of the length of his segregation sentence. Defendants argue Plaintiff's claims concerning his disciplinary conviction must be dismissed because Plaintiff has not established that the conviction was overturned in a state or federal habeas corpus proceeding. Plaintiff responds that Defendants mischaracterize his claims as "one claim regarding his disciplinary conviction." Plaintiff asserts his many claims include denial of due process, conspiracy to falsify charges; intentional infliction of emotional distress; false imprisonment, cruel and unusual punishment, and alteration of plea agreement.

---

[2] The Amended Complaint describes "a" formal grievance, which implies a single formal grievance was filed. This is consistent with Defendants' position that Plaintiff filed one formal grievance, which was returned to him for procedural defects.

12

Defendants cite Heck v. Humphrey, 512 U.S. 477 (1994) for the proposition that Court must look to the essence of Plaintiff's claims, regardless of form, to determine whether Plaintiff is seeking to establish unlawfulness that would render a conviction or sentence invalid. If so, Defendants request the Court to dismiss those claims because Plaintiff has not established that the conviction was overturned in a state or federal habeas corpus proceeding.

Plaintiff responds that Heck v. Humphrey only applies to issues that could invalidate a criminal conviction or sentence and that he is not challenging results of a disciplinary proceeding per se but is challenging general rules and procedures that constitute violations of constitutional rights. Plaintiff cites Bolin v. Black, 875 F.2d 1343 (8th Cir. 1989) for the proposition that if a disciplinary proceeding denies due process, a plaintiff can recover damages in a civil rights action for those personally involved in violation.

Plaintiff further explains that the denial of a hearing after the alteration of his plea agreement is a major issue in this case and that his claims are for violation of the Constitution by altering his plea agreement and that he has a constitutional liberty interest in being released on specific date. This appears to be the essence of Plaintiffs' claims.

In Heck v. Humphrey, the Court held that:

> …in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a 1983 plaintiff must prove that the conviction or sentence has

> been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.

512 U.S. at 486-87. The question this Court must consider is "whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." Id.

The Eighth Circuit applies the holding in Heck v. Humphrey in the context of prison disciplinary proceedings that affect the length of a prisoner's sentence. Sheldon v. Hundley, 83 F.3d 231, 233 (8th Cir. 1996). This is based on the theory that if the disciplinary ruling is invalid, the length of the prisoner's sentence is unlawful. Id.

If Plaintiff were successful in proving Defendants altered his plea agreement in the manner alleged and caused him to remain in prison longer than he would have if the plea agreement had not been altered, this would imply invalidity of the sentence he served. In other words, he would have been released earlier based on the correct computation of his good time credits. This is a situation where Heck v. Humphrey requires a plaintiff to first seek habeas corpus relief before filing a civil rights action for damages. Plaintiff did not do so. If

14

Plaintiff does obtain such habeas relief[3], his claims of constitutional violations may entitle him to recover damages in a subsequent civil rights action.

4. <u>Qualified immunity</u>.

Having determined that Plaintiff's federal claims should be dismissed for the reasons described above, this Court need not address whether Defendants are entitled to qualified immunity from the federal claims in this case.

5. <u>Eleventh Amendment</u>.

Defendants argue the Eleventh Amendment bars Plaintiff's state law claims. Defendants rely primarily on <u>Pennhurst State Sch. & Hosp. v. Halderman</u>, 465 U.S. 89, 106, 104 S.Ct. 900 (1984) for the proposition that the Eleventh Amendment bars federal courts from hearing claims that state officials violated state law in carrying out their official responsibilities, even if the claim is in federal court under supplemental jurisdiction.

Defendants, however, fail to recognize that Plaintiff has specifically sued them in their individual capacities, as indicated in the caption of the Amended Complaint. <u>Cf.</u> <u>Treleven v. University of Minnesota</u>, 73 F.3d 816, 818 n.2 (finding defendant named in official capacity where Complaint is silent about capacity in which defendant was sued). When damages are sought against a state official in his or her personal capacity, the Eleventh Amendment does not restrict

---

[3] The issue of whether Plaintiff's claim falls within the statute of limitations for such a habeas proceeding is not before the Court.

15

the ability to sue in federal court.  Hafer v. Melo, 502 U.S. 21, 31 (1991).  The Eleventh Amendment does not bar Plaintiff's state law claims.

      6.     Supplemental jurisdiction over state law claims.

Federal district courts have supplemental jurisdiction over state law claims related to the claims over which they have original jurisdiction.  28 U.S.C. § 1367(a).  However, district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if the district court has dismissed all claims over which it has original jurisdiction.  28 U.S.C. § 1367(c)(3).  Whereas this Court recommends that all of Plaintiff's federal claims be dismissed for failure to exhaust administrative remedies and failure to obtain habeas relief under the doctrine of Heck v. Humphrey, it is also recommended that the Court decline to exercise supplemental jurisdiction and allow the state courts to address Plaintiff's state law claims.

IV.  Recommendation

Based upon the above, and upon all the files, records and proceedings herein,

**IT IS HEREBY RECOMMENDED THAT**

    1.    Defendants' Motion for Summary Judgment [Docket No. 117] be granted;

    2.    All federal claims in the Amended Complaint be dismissed without prejudice;

    3.    the Court decline to exercise supplemental jurisdiction over Plaintiff's state law claims.

DATED: August 7, 2007

    _s/ Arthur J. Boylan_____
    ARTHUR J. BOYLAN
    United States Magistrate Judge

    Pursuant to Local Rule 72.1, any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties, written objections which specifically identify the portions of the Report to which objections are made and the bases for each objection. This Report and Recommendation does not constitute an order or judgment from the District Court and it is therefore not directly appealable to the Circuit Court of Appeals. Written objections must be filed with the Court by or before August 22, 2007.